# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ALLIED PROPERTY AND :
CASUALTY COMPANY and :
AMCO INSURANCE :
COMPANY, :
: CIVIL ACTION NO.
    Plaintiffs, : 1:12-CV-1265-RWS
:
v. :
:
BED BATH & BEYOND, INC. :
and ARCH INSURANCE :
COMPANY, :
:
    Defendants. :

## **ORDER**

This case comes before the Court on Plaintiffs' Motion to Dismiss Count III of Bed Bath & Beyond, Inc.'s ("BBB") Counterclaims ("Plaintiffs' Motion to Dismiss") [21]. After reviewing the record, the Court enters the following Order.

## **Background[1]**

This declaratory judgment action concerns an insurance coverage dispute.

---

[1] The following facts are taken from BBB's Counterclaims [14] and are accepted as true for purposes of Plaintiffs' Motion to Dismiss. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

BBB's Counterclaims arise out of five separate lawsuits (the "Underlying Lawsuits") filed against BBB "alleging bodily injury and/or property damage allegedly resulting from the use of certain fire pots and gel fuel products ('the Gel Fuel Products') distributed on a wholesale basis by Napa Home & Garden, Inc. ('Napa')." (BBB's Counterclaims, Dkt. [14] at 15 ¶ 8.) "Napa was at all relevant times a vendor of BBB and supplied the Gel Fuel Products at issue in the Underlying Lawsuits to BBB for resale by BBB at the retail level." (Id. ¶ 9.) "As a vendor and supplier of BBB, Napa contractually agreed to indemnify BBB with respect to, inter alia, claims for bodily injury and property damage resulting from the Gel Fuel Products." (Id. ¶ 10.) "Napa also agreed to name, and did in fact name, BBB as an additional insured under two general liability policies issued by Allied to Napa as a named insured, as well as two umbrella liability policies issued by AMCO to Napa as a named insured." (Id. ¶ 11.) "By virtue of Napa's contractual agreement to indemnify BBB, BBB is also a contractual indemnitee pursuant to two general liability policies issued by AMCO to Napa as a named insured." (Id. ¶ 12.) The six insurance policies referenced above are referred to collectively as the "Policies."

2

"Beginning in July 2011, BBB tendered the Underlying Lawsuits to Allied and AMCO for a defense and indemnification under the Policies." (Id. ¶ 45.) Plaintiffs denied coverage to BBB and refused to pay any of BBB's defense costs in the Underlying Lawsuits. (Id. ¶ 48.) On April 13, 2012, Plaintiffs initiated this declaratory judgment action against BBB and its insurer, Arch Insurance Company ("Arch"), seeking, among other things, a declaration that Plaintiffs are not obligated under the Policies to provide a defense or indemnification coverage to BBB. (Compl., Dkt. [1] ¶ 31.)

In Count III of BBB's Counterclaims, BBB raises a claim for bad faith under O.C.G.A. § 33-4-6, which provides for the recovery of a penalty and attorney's fees for an insurer's bad faith refusal to pay a claim. (BBB's Counterclaims, Dkt. [14] at 30-31 ¶¶ 82-90.) In support of this counterclaim, BBB alleges that Plaintiffs "have wrongfully and unlawfully refused to defend and indemnify BBB in connection with the Underlying Lawsuits." (Id. at 30 ¶ 83.) BBB alleges this constitutes "a material and continuing breach of the Policies" and an act of bad faith on the part of Plaintiffs. (Id. at 30-31 ¶¶ 84, 86.) BBB thus seeks to recover a "50 percent penalty from Allied and AMCO on all sums owed to BBB and all sums due to be paid on behalf of BBB in

3

connection with the Underlying Lawsuits, plus all reasonable attorney's fees incurred by BBB in pursuing its Counterclaims." (Id. ¶ 88.) Plaintiffs now move to dismiss BBB's bad faith claim for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## Discussion

**I.      Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

4

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## II. Analysis

Plaintiffs advance three arguments in support of their Motion to Dismiss Count III of BBB's Counterclaims. First, Plaintiffs argue that BBB's bad faith claim fails because BBB is not the "holder" of the any of the Policies, as required to recover under O.C.G.A. § 33-4-6 (the "statute"). (Mem. of Law in Supp. of Mot. to Dismiss Count 3 of BBB's Counterclaim ("Pls.' Mem."), Dkt. [21-1] at 4-5 of 13.) Second, Plaintiffs argue that BBB failed to make a pre-suit demand and therefore failed to satisfy a condition precedent to filing a claim

5

under the statute. (Id. at 6-9 of 13.) Finally, Plaintiffs contend that BBB has not alleged a "loss" recoverable under the statute. (Id. at 9-10 of 13.) The Court considers these arguments in turn.

### A. Is BBB a "holder" of the Policies?

Plaintiffs contend that BBB, as an "additional insured" under the Policies, is not the "holder" of the Policies and therefore may not recover under O.C.G.A. § 33-4-6. The statute provides as follows:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer . . . and all reasonable attorney's fees for the prosecution of the action against the insurer. . . .

O.C.G.A. § 33-4-6(a) (emphasis added). BBB argues that "an additional insured has the same benefits of coverage as a named insured" under an insurance policy and therefore qualifies as a "holder," entitled to bring a claim under the statute. (BBB's Resp. in Opp'n to Pls.' Mot. to Dismiss ("BBB's Resp."), Dkt. [22] at 5-10.)

6

The Court finds that Plaintiffs have failed to show that BBB, as an "additional insured," is not entitled to bring a claim for bad faith under the statute. None of the cases cited by Plaintiffs stands for this proposition. On the contrary, the cases relied on by Plaintiffs—in particular, Southern General Insurance Company v. Ross, 489 S.E.2d 53 (Ga. Ct. App. 1997) and Owen v. Allstate Insurance Company, 455 S.E.2d 368 (Ga. Ct. App. 1995)—stand for the proposition that only an "insured," as opposed to an injured third party, may bring a claim for bad faith under the statute. See Owen, 455 S.E.2d at 369 ("[The statute] generally allows an insured to recover bad faith damages and attorney fees against the insurer if the insurer in bad faith refuses to provide coverage on a covered loss. . . . [I]t does not follow that a person injured by the insured and who is not a party to the insurance contract may complain of the . . . bad faith of the insurer towards its policyholder in failing to adjust or compromise a claim against such policyholder . . . ." (emphasis added)); Ross, 489 S.E.2d at 57 (affirming trial court ruling that injured third party lacked standing to bring bad faith claim under the statute because "those statutory claims may only be made by the insured." (emphasis added)).

7

Based on the foregoing authority, the term "holder of the policy," as used in O.C.G.A. § 33-4-6, refers to the insured, in contradistinction to third parties, who are strangers to the insurance contract. Moreover, in holding that the statutory bad faith claim is available only to the insured, the cases cited above do not distinguish between a "named insured" and an "additional insured."[2] See also J. Smith Lanier & Co. v. Se. Forge, Inc., 630 S.E.2d 404, 407 (Ga. 2006) ("Bad faith claims under the Georgia insurance code . . . are available only as between insureds and their insurers." (internal quotations and citations omitted)). In this case, it is undisputed that BBB is an insured (specifically, an additional insured) under the Policies. Accordingly, the Court at this stage in the litigation cannot find as a matter of law, based on the authority cited by Plaintiffs, that BBB is not entitled to bring a claim under the statute.

---

[2] Plaintiffs cite Chicago Insurance Company v. American Southern Insurance Company, 156 S.E.2d 143 (Ga. Ct. App. 1967) for the proposition that Georgia courts "distinguish[] between liability policies that cover one 'as an additional insured' and policies that 'cover liability incurred by the policyholder.'" (Pls.' Mem., Dkt. [21-1] at 5 of 13.) That case did not involve a bad faith claim under O.C.G.A. § 33-4-6 and is not on point. The issue in Chicago Insurance Company was whether a named insured could recover under his own insurance policy (the "policy") for injuries he sustained as a result of the conduct of a third person, to whom liability insurance was extended under the policy as an "additional insured." 156 S.E.2d at 145-46. The case has no bearing on the issue presented here.

8

The Court further notes that permitting an additional insured to raise a bad faith claim under the statute is consistent with case law recognizing that an additional insured has the same coverage benefits under an insurance policy as the named insured. See Sumitomo Marine & Fire Ins. Co. of Am. v. South. Guar. Ins. Co. of Ga., 337 F. Supp. 2d 1339, 1356 (N.D. Ga. 2004) (noting that "an additional insured under defendants' policies . . . enjoys the same rights under defendants' policies as [the named insured]" and is "entitled to the same benefits of coverage that were granted to [the named insured]"). This conclusion also comports with the purpose behind O.C.G.A. § 33-4-6, which, as Plaintiffs and BBB agree, "is to penalize insurers that delay payments without good cause." Howell v. South. Heritage Ins. Co., 448 S.E.2d 275, 276 (Ga. Ct. App. 1994) (citation omitted). This policy would not be furthered by precluding additional insureds from bringing a bad faith claim under the statute.

In sum, Plaintiffs have failed to point to any authority for the proposition that an additional insured does not qualify as a "holder of the policy" with standing to bring a claim for bad faith under O.C.G.A. § 33-4-6. Absent such authority, the Court will not dismiss Count III of BBB's Counterclaims on this basis.

AO 72A
(Rev.8/82)

B. Did BBB satisfy the condition precedent to bringing its bad faith claim?

Plaintiffs next argue that BBB failed to make a pre-suit demand for payment under the Policies and therefore failed to satisfy a condition precedent to filing its bad faith claim under the statute. (Pls.' Mem., Dkt. [21-1] at 6-9 of 13.) As set out above, "O.C.G.A. § 33-4-6(a) provides that an insurer owes a bad faith penalty and reasonable attorney fees 'in the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith. . . .'" Stedman v. Cotton States Ins. Co., 562 S.E.2d 256, 258 (Ga. Ct. App. 2002). "As this section imposes a penalty, it is strictly construed; consequently, a proper demand for payment is essential for recovery." Id. (internal quotes and citations omitted). BBB does not dispute the foregoing. BBB argues, however, that (1) BBB sent a pre-suit demand to Plaintiffs, thus satisfying the statute's demand requirement, and (2) Plaintiffs waived the demand requirement, in any event, by filing the instant declaratory judgment action. (BBB's Resp., Dkt. [22] at 11-17.)

10

The Court finds this case to be controlled by Leader National Insurance Company v. Kemp & Son, Inc., 375 S.E.2d 231, 234 (Ga. Ct. App. 1988). In that case, the Georgia Court of Appeals found the demand requirement waived where an insurance company filed a declaratory judgment action to determine its liability under an insurance policy prior to the insured's filing of suit to recover for bad faith under the statute. Id. The Court held as follows:

> The purpose of the of the 60-day waiting period, which is to protect the insurer by giving it a reasonable time to investigate the claim, examine the facts, and determine its liability, is no longer served when the insurer files suit seeking to relieve itself of liability under the policy. . . . Consequently, since [the insurance company] filed a declaratory judgment action to determine its duty to defend its insured under the policy before initiation of the case sub judice, it waived the 60-day notice requirement of O.C.G.A. § 33-4-6.

Id. Based on the ruling in Kemp & Son, Inc., the Court finds that Plaintiffs waived the demand requirement of O.C.G.A. § 33-4-6.[3] BBB's bad faith

---

[3] In their reply brief, Plaintiffs rely on Howell v. Southern Heritage Insurance Company, 448 S.E.2d 275 (Ga. Ct. App. 1994) to argue that an insurance company's filing of a declaratory judgment action does not waive the statutory demand requirement. (Pls.' Reply Br. in Supp. of Mot. to Dismiss ("Pls.' Reply"), Dkt. [25] at 6-7 of 10.) In Howell, an insurance company sought a declaration of non-liability under an insurance policy, and its insured counterclaimed for bad faith under O.C.G.A. § 33-4-6. 448 S.E.2d at 275. The court upheld summary judgment in favor of the insurance company on the insured's bad faith counterclaim, reasoning that the insured failed to comply with the 60-day demand requirement of the statute. Id. The issue of waiver, however, was not raised in Howell, and therefore the court had no

11

counterclaim therefore is not due to be dismissed for failure to satisfy a condition precedent to filing a claim under the statute.

### C. Has BBB alleged a "loss" compensable under the statute?

Finally, Plaintiffs seek dismissal of BBB's bad faith counterclaim on grounds that BBB has failed to allege a loss that is compensable under the statute. (Pls.' Mem., Dkt. [21-1] at 9-10 of 13.) Plaintiffs contend that BBB is seeking to recover a penalty calculated on the basis of "'all sums due to be paid on behalf of BBB in connection with the Underlying Lawsuits'" (Pls.' Mem., Dkt. [21-1] at 9 of 13 (quoting BBB's Counterclaims, Dkt. [14] at 31 ¶ 88)), and, therefore, is seeking to recover a penalty "based on amounts paid by Arch [BBB's insurer]" (id. at 10 of 13). Plaintiffs explain this final argument in their reply brief: "Plaintiffs' final contention is that even if BBB has standing as a policyholder to seek a penalty and even if it made (or was excused from making) a timely and proper demand, any penalty must be calculated on the

---

occasion to consider the impact of an insurance company's filing of a declaratory judgment action, prior to an insured's assertion of a bad faith claim, on the insured's obligation to adhere to the 60-day demand requirement of the statute. Accordingly, the holding in Howell does not control the issue in this case.

12

amount BBB is owed under the policy and not any amounts paid by third parties on BBB's behalf." (Pls.' Reply, Dkt. [25] at 7 of 10.)

In response, BBB contends that it has alleged a compensable loss under the statute. (BBB's Resp., Dkt. 22 at 17-18.) BBB points to its allegation that "[it] has suffered and will continue to suffer damages and harm as a result of [Plaintiffs] . . . breach of the Policies, including but not limited to incurring defense costs associated with the ongoing defense of the Underlying Lawsuits." (Id. (citing BBB's Counterclaims, Dkt. [14] at 31 ¶ 87).)

The Court agrees with BBB and finds the foregoing a sufficient allegation of loss compensable under the statute. As is clear from its text, "[O.C.G.A.] § 33-4-6 broadly encompasses 'any loss which is covered by a policy of insurance.'" Mills v. Allstate Ins. Co., 653 S.E.2d 850, 852 (Ga. Ct. App. 2007). BBB alleges that it has and will continue to incur defense costs in connection with the Underlying Lawsuits, which costs should have been paid by Plaintiffs under the Policies. Accordingly, at the motion to dismiss stage of the litigation, the Court finds that BBB has alleged a loss that is compensable under the statute. Count III of BBB's counterclaim therefore is not subject to dismissal on the third ground urged by Plaintiffs.

13

## Conclusion

In accordance with the foregoing, Plaintiffs' Motion to Dismiss Count III of Bed Bath & Beyond, Inc.'s Counterclaim [21] is **DENIED**.

**SO ORDERED**, this  4th  day of February, 2012.

_____
**RICHARD W. STORY**
United States District Judge

14