IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, *et al.*, | : : : : |
| Plaintiffs, | : : CIVIL ACTION NO. : 1:12-CV-1265-RWS |
| v. | : : |
| BED BATH & BEYOND, INC. *et al.*, | : : : |
| Defendants. | : |

**ORDER**

On March 31, 2014, the Court entered an Order [97] concluding that any covered defense costs of Bed Bath & Beyond, Inc. ("BBB") or Arch Insurance Company ("Arch") prior to the exhaustion of the policy limits under Plaintiffs' policies would be split between the parties on a pro rata basis. The Court allowed the parties to engage in negotiations in an effort to resolve the amount of defense costs owed pursuant to the ruling, but the parties were unable to reach agreement. The parties submitted a proposed briefing schedule [99] to the Court based on their conclusion that "legal rulings from the Court are necessary

to resolve the amount of defense costs owed." (Request for Scheduling Order [99] at 1.) The parties have briefed the legal issues, and the case is before the Court for consideration. The Court will address all of the issues raised by the parties. However, based on these rulings, the Court is unable, at this time, to finally resolve the amount of defense costs owed. Because further development of the record may be necessary, the Court has endeavored to provide as much direction to the parties as possible. The hope is that these rulings will provide sufficient direction to allow the parties to resolve the ultimate issue by agreement.

**Friedenberg Declaration**

In support of its Initial Brief Regarding Defense Costs [104], Arch submitted the Declaration of Michael R. Friedenberg ("Friedenberg") [104-1]. Plaintiffs filed an objection [106] to the declaration. In his declaration, Friedenberg states that he is employed by Arch as a Claims Account Manager. His job duties include reviewing and evaluating payments to law firms retained to defend insureds under Arch's policies. In his capacity as a Claims Account Manager, he has reviewed the legal bills of attorneys defending BBB and

2

opines that all payments for the attorneys' services were reasonable and necessary.

Plaintiffs object to Friedenberg's testimony as inadmissible hearsay. Friedenberg relies on documents that are not in evidence to support his opinion. Apparently, the actual bills are in the custody of a third-party administrator. Plaintiffs assert that Friedenberg is offering testimony about the content of those documents to prove the truth of the matter asserted in them. As such, the testimony is hearsay. Because, he is not the custodian of the records, Friedenberg cannot satisfy the conditions for qualifying the records as "records of a regularly conducted activity." Moreover, Friedenberg's testimony involves expert opinions, and he was never disclosed as an expert at any point during the discovery process. Even if Friedenberg were qualified as an expert, he has failed to provide the data on which he relies for his opinions.

In its response, Arch asserts that Friedenberg's testimony is not hearsay because he is simply testifying as to the total paid out as defense costs, and this amount is within his personal knowledge. According to Arch, Friedenberg does not purport to offer testimony about the truth of any matter asserted in the bills. Also, Arch points out that inadmissible hearsay may be considered at the

AO 72A
(Rev.8/82)

summary judgment stage if the court is satisfied that the statement can be reduced to admissible form. Arch argues that Friedenberg's opinions were not offered as an expert, but are proper under Federal Rule of Evidence 701.

The Court does not doubt that Arch could reduce the evidence of expenditures for defense costs to an admissible form. However, Friedenberg's opinion that the defense costs were reasonable and necessary is not admissible. His opinion is based on his experience as a Claims Account Manager. Experience and knowledge acquired in his field are necessary to qualify him to offer that opinion. His opinion is not a "lay opinion" as contemplated by Rule 701. Friedenberg was not identified as an expert and has not been subjected to an inquiry regarding his qualifications or the bases for his opinion. Thus, Plaintiffs' objection is **SUSTAINED** to the extent it challenges Friedenberg's opinion as to the defense costs being reasonable and necessary.

Arch bears the burden of proving that the expenses were reasonable and necessary. Plaintiffs are not liable for all expenses paid, only those that are reasonable and necessary. See St. Paul Fire and Marine Ins. Co. v. Valley Forge Ins. Co., Case No. 1:06-CV-2074-JOF, 2009 WL 789612, at *11 (N.D.Ga. March 23, 2009); Mutual Service Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312,

1323 (11th Cir. 2004); <u>Avondale Shipyards, Inc. v. Emp'rs Mut. Liab. Ins. Co.</u>, 458 F.2d 900, 902 (5th Cir. 1972). Without Friedenberg's opinion testimony, Arch is unable to establish the amount it is entitled to recover. Thus, while Arch has established that it is entitled to recover defense costs from Plaintiffs, the Court is unable to calculate those damages on the present record.

**Legal Questions Posed by Parties**

Though the Court is unable to calculate the damages on the present record, the Court will address the legal questions posed by the parties to assist them in trying to resolve this issue by agreement. The parties identified the following as questions that the Court must resolve in order for the defense cost issue to be decided:

(1) whether Plaintiffs are liable for defense costs that fall within the deductible applicable under the Arch policy;

(2) when BBB elected coverage so as to make Plaintiffs liable for defense costs;

(3) whether the fees of BBB's coordinating counsel, SNR Denton, constitute defense costs;

5

(4) whether fees incurred in investigating a claim prior to suit being filed are covered; and

(5) whether defense costs paid by Plaintiffs should be paid to Arch or to BBB.

The Court will address each of these questions, in turn.

**(1) Are Plaintiffs liable for defense costs that fall within the deductible applicable under the Arch policy?**

Allied Property and Casualty Insurance Company ("Allied") takes the position that it is not liable for any of BBB's defense costs incurred as of May 3, 2012 that fall within the deductible applicable under the Arch policy. Allied's position is based on its contention that an "other insurance" clause in the Allied policy "provides that it is excess to 'valid and collectable insurance' that is 'issued by another insurer.'" (Reply Br. [111] at 4.) However, the Court has already determined that the parties' "other insurance" clauses cancel each other out. (March 31 Order [97] at 26-30.)

"The method for allocation between insurers must be determined by the provisions of the contracts they have made." St. Paul Fire and Marine Ins. Co. v. Valley Forge Ins. Co., Case No. 1:06-CV-2074-JOF, 2009 kWL 789612, at

6

*12 (N.D. Ga. March 23, 2009). Under the terms of Plaintiffs' contract, Allied had the duty to defend its insureds and has not identified any deductible applicable to that obligation under the terms of the contract. (Policy No. ACP BPWC 7113714050 ("Subject Policy") [75-3], at 58.) Therefore, Allied is liable for defense costs incurred prior to BBB exhausting its deductible under the Arch policy.

**(2) When did BBB elect coverage so as to make Plaintiffs liable for defense costs?**

The Court is also required to determine when BBB elected coverage so as to make Allied liable for defense costs. Allied asserts that "BBB did not affirmatively elect coverage as an additional insured until December 14, 2011, when it tendered the Price, Hubbard, Pariano, and Stone lawsuits to Plaintiffs for coverage as an additional insured." (Pls.' Initial Br. [103] at 8.) Allied asserts that prior to that time, "BBB asserted a contractual indemnity claim against Napa *only*." (Id. (emphasis in original).) BBB and Arch contend that BBB elected coverage through its July 18, 2011 letter tendering the defense of BBB to Napa Home & Garden, Inc. ("Napa"), which letter was provided to Allied.

7

The Court finds that this issue is governed by the holding in <u>BBL-McCarthey, LLC v. Baldwin Paving Co.</u>, 285 Ga. App. 494, 499 (2007), in which the Court of Appeals held that insurers had a duty to defend additional insureds, even though the additional insureds failed to elect coverage by forwarding a copy of the complaint to the insurers. The insurers had actual notice of the underlying actions and had not demonstrated that they were prejudiced by any alleged lateness of additional insureds' election of coverage. In the present case, Allied was on notice of the claims for which BBB seeks coverage, and Allied has shown no prejudice arising from late notice of the election of coverage. Therefore, the Court finds that Plaintiffs owe defense costs incurred from July 18, 2011.

**(3) Do the fees of BBB's coordinating counsel, SNR Denton, constitute defense costs?**

SNR Denton was retained by BBB to serve as national coordinating counsel based on the numerous lawsuits and claims filed around the country. Plaintiffs oppose awarding fees billed by SNR Deaton because it never appeared as counsel for BBB in any of the underlying lawsuits and its fees include advice on matters other than the underlying suits. In response, Arch

8

relies on the opinion of Friedenberg that the fees of SNR Denton were reasonable and necessary to defend BBB. BBB relies on the holding in <u>Caterpillar, Inc. v. Century Indemnity Co.</u>, 2011 WL 488935 (Ill. App. 3rd Dist., Feb. 1, 2011) in support of an award of fees for the work of national coordinating counsel.

Recognizing that Defendants bear the burden of proof regarding the reasonableness of the fees they seek to recover, the Court concludes that they have failed to carry that burden. Based on the ruling on Plaintiffs' Objection to the Friedenberg, *supra*, his opinion is not sufficient to prove the reasonableness of the fees. The <u>Caterpillar</u> decision is not binding authority, but even if it were, it is distinguishable from the present case. In <u>Caterpillar</u>, the insurer had not objected to the fees associated with the national coordinating counsel ("NCC") in the trial court. The trial court had only required the insurer to pay defense costs that were approved by its own expert. The insurer challenged the fees "because they were not 'incurred' in defense of an underlying action." <u>Id.</u> at *11. However, the insured offered testimony that the "NCC activities were applicable to each and every case and they were legitimate defense costs incurred . . . in the defense of the underlying [] claims." <u>Id.</u> (internal quotations

9

omitted).The insurer's expert did "not indicate that he found NCC costs were not viable expenses incurred in defense of the [] actions." Id. In the present case, Plaintiffs have objected to the fees of SNR Denton as a national coordinating counsel and assert that SNR Denton did not defend the lawsuits. Thus, SNR Denton is not in the same position as the NCC in Caterpillar.

Plaintiffs also question SNR Denton's fees because fees are included for "such wide-ranging matters as Napa's bankruptcy case, BBB's coverage claims, non-litigated fuel gel claims, and other items not related to the defense of liability suits involving fuel gel." (Pls.' Br. [103] at 10.) Fees related to Napa's bankruptcy case and BBB's coverage claims are likely not recoverable.

Depending upon the actual work performed by SNR Denton, their fees may or may not be recoverable, in whole or in part. The determination of this issue will be based on the evidence concerning the actual work that was done. At this point, the Court does not have sufficient evidence from which to make this determination.

**(4) Are covered costs limited to litigated claims?**

The Allied Policy provides a "duty to defend the insured against any 'suit,'" which is defined as "a civil proceeding in which damages because of . . .

10

injury . . . to which this insurance applies" and includes "an arbitration" and "any other alternative dispute resolution" in which covered damages are alleged. (Subject Policy [75-3] at 66, 80.) Based on this policy language, Plaintiffs assert that Defendants cannot recover any defense costs as to a claim unless and until a lawsuit is filed as to that claim.

BBB relies on the holding in Liberty Mut. Ins. Co. v. Continental Casualty Co., 771 F.2d 579, 586 (1st Cir. 1985) to support its claim of entitlement to costs associated with investigating regardless of whether suit is filed on the claim. Underlying the Liberty Mutual decision is the recognition that the pre-suit work that was performed related to services that would have had to be performed after suit was filed. Id. at 586. Also, the insurer had wrongfully denied coverage. Id. at 580-81. Plaintiffs distinguish Liberty Mutual based on the fact that it involved a wrongful denial of coverage and an existing hazardous condition that needed to be addressed.

Acknowledging that Liberty Mutual can be distinguished on these grounds, the Court is not convinced that Defendants' claims should be limited to services occurring after suit is filed. This approach ignores the reality of the typical defense of claims, particularly claims that are based on a product that is

11

likely to affect a number of potential plaintiffs. Allied's own policy requires an insured to notify it "as soon as practicable of an 'occurrence' or offense that may result in a claim." (Subject Policy [75-3] at 75.) The obvious purpose of notification is so that Allied may move promptly to gather evidence and prepare a defense in the event suit is filed. Work performed, even though no suit has been filed, may well be reasonable and necessary. Further, as Arch points out, "civil proceeding" is not defined in the Subject Policy. (Arch Brief [107] at 7-8.) The Court is unwilling to declare that fees for such services are, in all instances, unrecoverable.

**(5) Should recovered costs be paid to BBB or to Archer?**

Allied had a duty to defend BBB as an additional insured under the Subject Policy. (Subject Policy [75-3] at 58.) This obligation was not subject to any deductible. On the other hand, BBB was subject to a deductible under the Arch policy, and Arch incurred no expenses for defending BBB before May 3, 2012, because the deductible was not exhausted by that time. Arch asserts that costs recovered pursuant to this action should be paid to it because BBB is not entitled to recover its deductible prior to Arch recovering its expenditures.

12

In support of its argument that the Arch policy does not require that the deductible be paid by the insured and not a third party, BBB relies on cases holding that unless a policy clearly states that the insured itself must satisfy a self-insured retention limit ("SIR"), amounts obtained from third parties may satisfy the SIR. See Nat'l Fire Ins. Co. of Hartford v. Federal Ins. Co., 843 F. Supp.2d 1011, 1017 (N.D.Cal. 2012) (holding that when the "policy does *not* clearly require the [insured] to satisfy the SIR out of its own pocket," the SIR can be satisfied by payments by others on its behalf); Continental Cas. Co. v. N. Am. Capacity Ins. Co., 683 F.3d 79 (5th Cir. 2012) (holding SIR may be satisfied by a third party on insured's behalf).

In response, Arch notes that the authorities relied upon by BBB involve SIRs and not deductibles. Citing Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc., 309 Conn. 449, 79 A.3d 36 (2013), Arch argues that an insured is not entitled to recover its deductible payment before the insurer recovers any sums. In Fireman's Fund, the court addressed certified questions from the Second Circuit Court of Appeals concerning the applicability of the make whole doctrine to deductibles. The question arose in connection with a recovery by an insurer and its insured in a subrogation action. The court concluded that

13

to allow an insured to recover its deductible payment before the insurer is made whole would result in a windfall to the insured. The court analogized to the situation when there is a primary and an excess policy. If there is a recovery, the excess level of insurance is entitled to recover before the lower level of insurance can recover. By analogy, the court held thta the deductible, like the lower level of insurance, can not be recovered until the insurer recovers.

The Court finds the present case is distinguishable from Fireman's Fund. The underlying claim in the present case was not a subrogation claim. BBB was an additional insured under the Subject Policy, and Allied was obligated to provide BBB a defense, at no cost to BBB. To allow BBB to recover a portion of its deductible will not result in a windfall for BBB. BBB will simply receive the benefit of its bargain with Napa that BBB be held harmless for any claims for bodily injury arising out of the use of Napa's Fuel Gel Products. Even if BBB recovers, it will only be reimbursed half of its expenses. If Arch does not recover, its obligations are not altered. It still receives the benefit of BBB's full deductible. Allowing Arch to recover rather than BBB would result in a windfall for Arch.  Under these circumstances, the Court finds that the equities weigh in favor of BBB recovering any defense costs that are ultimately

14

awarded. BBB will be entitled to one-half of the defense costs that the Court finds to be reasonable and necessary from July 18, 2011 through May 3, 2012.

**Conclusion**

The parties are **ORDERED** to confer and attempt to agree upon a schedule for proceeding with this case. If the parties are unable to agree upon a schedule within 14 days of the entry of this Order, they shall request a conference with the Court. If limited discovery is needed, the Court will allow it. Ultimately, the Court expects the parties to submit for decision only those fees for which Plaintiffs have specific objections.

**SO ORDERED**, this  4th  day of November, 2014.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)